UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY N. NARDOLILLO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　　　　Defendant. | Case No. 16-cv-05365-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 60 |

## INTRODUCTION

Currently before me is Chase's motion for summary judgment on the three claims remaining in this action: (1) violation of California Civil Code § 2924.17 (prohibiting the recording of foreclosure documents without verifying the right to foreclose and including inaccurate information in foreclosure-related filings); (2) violation of California Civil Code § 2923.6 (prohibiting "dual tracking" loan modification and foreclosure); and (3) wrongful foreclosure. Chase presents evidence that it has (and at all relevant time had) the authority to foreclose on the property at issue and plaintiff fails to present admissible evidence to create a dispute of material fact. Therefore, I GRANT Chase's motion and enter summary judgment in its favor.

## BACKGROUND

On August 2, 2004, Nardolillo obtained a loan with Washington Mutual Bank ("WaMu") for $1,462,500.00, secured by a property located at 5405 Greenville Road, Livermore, CA 94550. Declaration of Theresa A. Rundquist [Dkt. No. 60-2] Ex. 1.[1] The Deed of Trust listed WaMu as

---

[1] Chase requests the court to take judicial notice of: (1) the 2004 Deed of Trust (RJN, Ex. 1, Dkt. No. 60-27); (2) the 2008 Purchase and Assumption Agreement between FDIC/WaMu and Chase (RJN, Ex. 2, Dkt. No. 60-28);

the mortgagee. Rundquist Decl. [Dkt. No. 60-3] Ex. 2. As relevant to this motion, Chase claims – based on the Declaration of Theresa A. Rundquist, employee of JPMorgan Chase Bank, N.A. – that it acquired the right to service Nardolillo's loan in September 2008, pursuant to the Purchase and Assumption Agreement ("PAA") Chase entered into with the Federal Deposit Insurance Corporation ("FDIC") as the receiver of WaMu. Rundquist Decl. ¶ 5. Chase then began servicing the loan and has continued to service it until present. Rundquist Decl. ¶6. Chase also asserts, through Rundquist, Chase "has physical possession of the Original Note" and "currently owns the Loan." Id. ¶ 7.

As of October 1, 2010, Nardolillo failed to make his monthly mortgage payments and went into default on the note. Rundquist Decl. [Dkt. No. 60-1] ¶ 11. A Notice of Default and Election to Sell was recorded by California Reconveyance Company in Alameda County on March 14, 2011. Rundquist Decl. [Dkt 60-6] Ex. 5. Thereafter, California Reconveyance Company, ALAW, and MTC Financial Inc. dba Trustee Corps recorded nine Notice of Trustee's Sales in Alameda County; on June 15, 2011; June 26, 2012; September 26, 2012; March 5, 2013; January 15, 2014; April 17, 2014; August 6, 2014; January 20, 2016; and July 7, 2016. Rundquist Decl. [Dkt. Nos. 60-7 – 60-15] Ex. 6-14. On October 20, 2014, a Corporate Assignment of Deed of Trust ("CADOT") was recorded in Alameda County for the Nardolillo property in Livermore. The document was signed by Chase as "Attorney In Fact" for "the Federal Deposit Insurance Corporation as Receiver of Washington Mutual Bank" and assigned the deed from WaMu to

---

(3) the 2014 Corporate Assignment of Deed of Trust (RJN, Ex. 3, Dkt. No. 60-29); (4) the 2011 Notice of Default (RJN, Ex. 4, Dkt. No. 60-30); (5) the Notice of Trustee's Sale dated June 15, 2011 (RJN, Ex. 5, Dkt. No. 60-31); (6) the Notice of Trustee's Sale dated June 26, 2012 (RJN, Ex. 6, Dkt. No. 60-32); (7) the Notice of Trustee's Sale dated September 26, 2012 (RJN, Ex. 7, Dkt. No. 60-33); (8) the Notice of Trustee's Sale dated March 5, 2013 (RJN, Ex. 8, Dkt. No. 60-34); (9) the Notice of Trustee's Sale dated January 15, 2015 (RJN, Ex. 9, Dkt. No. 60-35); (10) the Notice of Trustee's Sale dated April 17, 2014 (RJN, Ex. 10, Dkt. No. 60-36); (11) the Notice of Trustee's Sale dated August 6, 2014 (RJN, Ex. 11, Dkt. No. 60-37); (12) the Notice of Trustee's Sale dated January 20, 2016 (RJN, Ex. 12, Dkt. No. 60-38); (13) the Notice of Trustee's Sale dated July 7, 2016 (RJN, Ex. 13, Dkt. No. 60-39); (14) after July 25, 2016 there is an absence of any Notice of Default or Notice of Trustee's Sale recorded against the title to the real property. Plaintiff submits no objection to the request. Under Federal Rules of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice of public records is appropriate, *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008), and defendant's request is GRANTED.

Chase. Rundquist Decl. [Dkt. No. 60-4] Ex. 3.[2]

Nardolillo requested a loan modification from Chase at the end of July 2016. Rundquist Decl. [Dkt No. 60-16] Ex. 15. On August 2, 2016, Chase sent Nardolillo a letter postponing the foreclosure sale of the property to August 22, 2016. Rundquist Decl. [Dkt. No. 60-17] Ex. 16. On August 16, 2016, Chase sent another letter postponing the foreclosure to September 26, 2016. Rundquist Decl. [Dkt. No. 60-18] Ex. 17. Chase reviewed Nardolillo's loan modification application and denied it on February 14, 2017, concluding he was not eligible for a modification. Rundquist Decl. [Dkt. No. 60-19] Ex. 18. Nardolillo appealed Chase's denial on March 6, 2017. Rundquist Decl. [Dkt. No. 60-20] Ex. 19. Nardolillo filed a complaint against Chase and MTC Financial in California State Court on August 16, 2016, and it was removed to this Court on September 19, 2016. Notice of Removal [Dkt. No. 1] ¶¶ 1, 3.

Nardolillo disputes whether Chase secured servicing (and foreclosure rights) and whether Chase currently "owns" his loan. As support, he relies on a "Property Securitization Analysis Report" prepared by Robert K. Ramers. That report notes, "[w]hile we could not verify with certainty that this loan was placed in a trust prior to September of 2008, it is highly likely that the loan was securitized in the trust shown in this report or in a private trust." Declaration of Clarisse Chung [Dkt. No. 61-3] Ex. 7 at 3. Nardolillo also relies on a series of emails between his counsel and counsel for the FDIC. In those emails, in response to plaintiff's subpoena for records relating to Nardolillo's loan, the FDIC's counsel stated that it did "not retain any of the records [of WaMu] relating to assets acquired by JP Morgan Chase Bank." Chung Decl. [Dkt. No. 61-2] Ex. 2. Nardolillo also points out that while Chase asserts it currently "owns" the loan, Chase has not produced the original note.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Nardolillo disputes whether Chase had the authority to sign the CADOT, but Chase shows through Rundquist that it was in fact Attorney In Fact for FDIC at that time and had authority to sign the CADOT.

3

law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I. VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17**

Nardolillo alleges Chase violated California Civil Code Section 2924.17 which provides:

> (a) . . . [A] notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded *by or on behalf of a mortgage servicer* in connection with a foreclosure subject to the requirements of Section 2924 . . . shall be accurate and complete and supported by competent and reliable evidence.
>
> (b) Before recording or filing any of the documents described in subdivision (a), a *mortgage servicer* shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Cal. Civ. Code § 2924.17(a)-(b) (emphasis added). Nardolillo asserts that Chase violated the statute when: (1) Chase recorded and filed foreclosure documents (including the notice of default and notice of trustee's sale) without sufficient evidence that it had the right to foreclose, because plaintiff contends the loan was securitized and, therefore, Chase could not have owned plaintiff's loan; and (2) the CADOT Chase recorded in October 2014, was not accurate because there is a

4

dispute of fact as to how the FDIC could have authorized that document when it did not retain any records related to plaintiff's loan. Compl. [Dkt. No. 1-1] ¶¶ 25-28; Oppo. at 2.

In moving for summary judgment, Chase relies on the declaration of Theresa A. Rundquist, who declares that Chase owns the loan, has physical possession of the note, and has handled the servicing of the loan since September 2008. Rundquist Decl. ¶¶ 6-7. As to the CADOT signed by Chase as "Attorney In Fact" for the FDIC on October 10, 2014, Rundquist declares that based on her review of Chase's records "pertaining to its authority to act for the FDIC" at the time, Chase had authority to act as the FDIC's Attorney In Fact. Rundquist Decl. ¶¶ 9-10. Rundquist attaches to her declaration the Limited Power of Attorney signed by the FDIC as Receiver of WaMu and Chase, giving Chase the authority to sign as Attorney In Fact of the FDIC as Receiver of WaMU between September 25, 2012, and September 25, 2016, for documents including the transfer of deeds for any asset formerly held by WaMu to Chase pursuant to the PAA signed by the parties on September 25, 2008. Rundquist Decl. [Dkt. No. 60-5] Ex. 4.

Nardolillo contends there are triable issues of material fact as to Chase's right to foreclose on the loan and its power to sign the CADOT. He attempts to create a dispute of fact by noting that the PAA does not identify the loans transferred to Chase and that Chase does not assert that it has possession of the original note. Oppo. at 5-6. However, Chase has submitted competent evidence that it has continuously serviced the loan since 2008, and that it currently owns the loan and possesses the note. Rundquist Decl. ¶¶ 5-7. Having met its initial burden, Nardolillo is required to come forward with competent evidence to raise a material dispute of fact. As to possession of the original note, "under California law possession of the original note is not a requirement for foreclosure. . . . Courts have also rejected challenges to foreclosure proceedings based on arguments that the foreclosing party had failed to produce the original deed of trust." *Cadenasso v. Bank of America*, 2013 WL 12174297, at \*4 (N.D. Cal., Jan. 8, 2013).

The only "evidence" Nardolillo submits to challenge Chase's evidence is a Property Securitization Analysis Report conducted on the property. Chung Decl. [Dkt. No. 61-3] Ex. 7. It is inadmissible. Nardolillo made no effort to authenticate that report or to lay a proper foundation for its admission. If it had been admissible, that Securitization Report only speculates that the

loan in question *may* have been securitized prior to the sale of assets to Chase. *Id*. The Report's conclusion was, "[w]hile *we could not verify* with certainty that this loan was placed in a trust prior to September of 2008, it is *highly likely* that the loan was securitized in the trust shown in this report or in a private trust. The details of a qualifying trust (based on the loan date and the closing date of the trust) that *could* have acquired this loan are included in this report." *Id.* at 3 (emphasis added). "May" is not sufficient to defeat summary judgment.[3]

Nardolillo also argues that the CADOT cannot prove Chase's standing to foreclose, because the FDIC – whom Chase was acting on behalf of in signing the CADOT – admitted that it did not retain any records or ever have in its possession records from WaMu relating to the assets acquired by Chase. Chung Decl. [Dkt. No. 61-2] Ex. 2. Since the FDIC never retained the records of specific assets transferred from WaMu to Chase, Nardolillo argues that there is a question of fact regarding if the CADOT is supported by "competent and reliable evidence" as required in California Civil Code § 2924.17. Oppo. [Dkt. No. 61] at 6. But the email only claims that the FDIC did not keep records or possess the types of records Nardolillo sought from it. The email does not counter the sworn testimony from Rundquist that at the time the CADOT was signed, Chase had the right to act as the FDIC's Attorney In Fact to execute that document.

Nardolillo has failed to raise a question of material fact to preclude summary judgment on his Section 2924.17 claim.

## II. VIOLATION OF CALIFORNIA CIVIL CODE § 2923.6

Nardolillo also argues that Chase violated Section 2923.6. That section prohibits "dual-tracking" of specific foreclosure actions while loan modifications are pending:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, *trustee*, beneficiary, or authorized agent shall not *record* a notice of default or notice of sale, or *conduct* a trustee's sale, while the complete first lien loan modification application is pending.

Cal. Civ. Code § 2923.6(c) (emphasis added).

---

[3] A report's speculation regarding possible securitization of a note is insufficient to preclude summary judgment. *Hanson v. Wells Fargo Bank N.A.*, 2011 WL 2144836, at *4 (W.D.Wa., May 26, 2011).

6

The parties do not dispute that as of July 25, 2016, Nardolillo had an active loan modification request pending with Chase. Rundquist Decl. [Dkt. No. 60-16] Ex. 15. The last Notice of Trustee's Sale was recorded in Alameda County on July 7, 2016. Rudquist Decl. [Dkt. No. 60-15] Ex. 14. After the July 7, 2016, Notice of Trustee's Sale, no other foreclosure-related documents have been recorded. However, the foreclosure sale was postponed a few times and Chase sent letters to Nardolillo informing him that the sale dates were postponed. Rundquist Decl. [Dkt. No. 60-1] ¶ 18. The sole question, therefore, is whether those postponement letters violate the dual-tracking prohibition.

Chase argues that by its explicit terms, Section 2923.6(c) only prohibits the *recording* of a "notice of default or notice of sale" or the "*conducting* of a trustee's sale" while the loan modification is pending (emphasis added). As noted above, Chase did not record any notices or conduct a sale after Nardolillo submitted his loan modification application. Chase also argues that the mere sending of sale postponement notices cannot and should not violate Section 2923.6(c), because Chase is required to send those notices by other, related provisions of the Homeowners Bill of Rights (HBOR). *See, e.g.*, California Civil Code Section 2924(a)(5) ("whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement."); *see also* Mot. [Dkt. No. 60] at 11. Nardolillo contends that these postponement communications are actionable because the purpose of the HBOR was to allow the borrower to not have to worry about a foreclosure while having their loan modification reviewed.[4]

There are no disputes of fact here. The plain language of the statute reaches only the recording of notices or conducting a sale, neither of which occurred.

---

[4] The two cases relied on by Nardolillo acknowledge the policy behind the HBOR's prohibition on dual-tracking, but neither address the question at hand; whether unrecorded communications informing homeowners that trustee sale dates have been postponed violate that provision. *See Monterossa v. Superior Court of Sacramento County*, 237 Cal. App. 4th 747 (2015) (violation of HBOR where a Notice of Trustee Sale was *recorded* while the loan modification was underway); *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 905 (2013) (recognizing prohibition on dual-tracking "intended to prevent borrowers from being given the run around.").

7

## III. WRONGFUL FORECLOSURE

In his Complaint, Nardolillo alleged that Chase has no authority to foreclose on his property because Chase did not have the power to do so as Nardolillo's loan was not part of the PAA transfer (securitization argument) and Chase did not have authority to act as FDIC's Attorney In Fact when signing the CADOT. Complaint ¶¶ 34-38. Nardolillo also alleged that Chase's conduct, in moving for foreclosure, violated of California Civil Code Section 2924(a)(6), which provides:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

Cal. Civ. Code § 2924(a)(6).

Chase moves for summary judgment, arguing that Nardolillo cannot state this claim, either as a violation of Section 2924(a)(6) or as an equitable cause of action,[5] because no foreclosure has occurred, there is no private right of action under Section 2924(a)(6), and, as shown above, Chase has authority to foreclose. Mot. at 11-13. Nardolillo did not address any of these arguments in his Opposition or otherwise show why summary judgment is not appropriate on this claim. As noted above, Chase has submitted competent evidence that it had the power and right to initiate foreclosure proceedings. Summary judgment is GRANTED to Chase on the wrongful foreclosure cause of action.

---

[5] "The elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011).

## CONCLUSION

Chase's motion for summary judgment is GRANTED, and judgment shall be entered in accordance with this Order.

**IT IS SO ORDERED.**

Dated: November 14, 2017

William H. Orrick
United States District Judge